UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| United States of America, | Case No. 2:23-cr-00195-CDS-BNW |
|---|---|
| Plaintiff | **Order Overruling Defendant's Objections and Adopting the Report and Recommendation of the Magistrate Judge, and Denying Shove's Motion to Suppress** |
| v. | |
| Leonard James Shove, | |
| Defendant | [ECF Nos. 20, 61, 66] |

Leonard J. Shove was indicted in October of 2023. The indictment alleges that Shove committed the offenses of Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), and Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252(b)(2). Indictment, ECF No. 1. Pending before the court is Shove's objection (ECF No. 66) to United States Magistrate Judge Brenda Weksler's report and recommendation (R&R) that I deny his motion to suppress (ECF No. 20). The objection is fully briefed. Resp., ECF No. 67. For the reasons set forth herein, the court finds that the R&R is neither clearly erroneous nor contrary to the law. As a result, Shove's objection is overruled, and the R&R is affirmed and adopted in full. Shove's motion to suppress is therefore denied.

I.  **Legal standard**

A party may file specific written objections to the findings and recommendations of a magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1); Local Rule IB 3-2. Upon the filing of such objections, the court must conduct a de novo analysis of the legal determination of those portions of the report to which objections are made. *Id.* The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1); LR IB 3-2(b).

The district court reviews the magistrate judge's decision under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law."). However, "a district court may not reject the factual findings of a magistrate judge on a motion to suppress without conducting a de novo evidentiary hearing." *United States v. Ridgway*, 300 F.3d 1153, 1155 (9th Cir. 2002) (citing *United States v. Bergera*, 512 F.2d 391, 392–94 (9th Cir. 1975)). That is because "[t]he reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

The "clearly erroneous" standard applies to a magistrate judge's factual findings, whereas the "contrary to law" standard applies to a magistrate judge's legal conclusions. *See, e.g.*, *Grimes*, 951 F.2d at 240. A magistrate judge's finding is "clearly erroneous" if the district judge has a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

II.     Background Information[1]

In 2002, defendant Leonard Shove was convicted of possession and receipt of child pornography in violation of 18 U.S.C. §§ 2252(A)(2) and (A)(a)(5)(B). *See* J., ECF No. 22 in 2:02-cr-00413-RLH-LRL.[2] He was sentenced to thirty-three months in prison, per count, to run concurrently, followed by a three-year term of supervised release. *Id.* In May of 2005, Shove's

---

[1] The court takes judicial notice of the dockets in two other criminal cases filed against defendant Shove: 2:02-cr-00413-RLH-LRL and 2:05-cr-00416-JCM-BNW. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)) ("Courts routinely take judicial notice of their own court records.") The information included in this background section is drawn from the court dockets and the transcript of the evidentiary hearing on Shove's motion to suppress that was held on September 26, 2024.

[2] *See also* Hr'g tr., ECF No. 59 at 14:2–4.

2

supervision was revoked, and he was sentenced to nine months in custody, followed by twenty-seven months of supervised release. Revocation j., ECF No. 33 in 2:02-cr-00413-RLH-LRL.

Based on evidence obtained when Shove violated the terms of his supervision in his 2002 case, Shove was charged with one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) in November of 2005. *See* ECF No. 1 in 2:05-cr-00416-JCM-BNW.[3] In 2007, Shove pleaded guilty to the sole count of that indictment and he was sentenced to 150 months in custody, followed by a lifetime term of supervised release. *Id.* at ECF Nos. 62, 79, 81. In 2018, Shove's supervised release was revoked after he was found in possession of an unauthorized cellphone, which contained child sexual abuse material and messages showing Shove was attempting to meet up with a minor to engage in sex. *Id.*, Mins. of proceedings at ECF No. 134. As a result, his supervised release was revoked, he was imprisoned for a term of twenty-four months, and his lifetime term of supervision was re-imposed. *Id.*; *see also id.* at ECF No. 135 (revocation judgment). Shove re-commenced his term of lifetime supervision in this case in April of 2020. *Id.* at ECF No. 136, (request for modification).

On May 24, 2023, Shove failed to attend a scheduled polygraph examination due to illness.[4] Shove's probation officer, Bryce Stark, visited Shove at Shove's apartment later that day. ECF No. 59 at 35:19–36:4. Officer Stark testified that Shove told him that he had lied about being ill because he was fearful of taking the polygraph test after the examiner previously told him that he had suspect or failed answers to questions about contact with minors. *Id.* at 36:10–37:2. Officer Stark testified that Shove's voluntary statement about being afraid to take the exam suggested to him that Shove might be trying to hide or not disclose something during the polygraph. *Id.* at 37:11–14. Shove was asked if he had any unauthorized devices and in response, he stated he did not. *Id.* at 37:23–38:1. The exam was rescheduled for the following day, which

---

[3] *See also* ECF No. 59 at 17.
[4] Shove does not dispute, nor challenge, the periodic polygraph-examination condition of his supervision.

Shove attended. *Id.* at 38:2–9. The polygrapher concluded[5] that Shove had "a significant reaction to the question regarding using or possessing an electronic device that was not known to probation." *Id.* at 46:3–5; *see also id.* at 47:25–49:20.

Concerned about the results of the examination, as well as other previous issues supervising Shove,[6] Officer Stark obtained permission from his supervisor to conduct a search. *Id.* at 50:14–51:11. Initially, the search was going to be conducted at Shove's residence, however he had been evicted. *Id.* at 51:16–52:3. As a result, Officer Stark and several other officers went to Shove's counseling center because Officer Stark knew Shove had a previously scheduled appointment that day. *Id.* at 52:17–53:2. Upon arrival, Officer Stark entered the front door and proceeding into the waiting room. *Id.* at 55:7–12. From the waiting room, he was able to see down a hallway, where Shove was seated in his therapist's office. I*d.* The officer noted that there was a "backpack sitting on a chair with a hardhat attached to it," which caught his attention because he knew Shove worked on construction sites. *Id.* at 55:18–56:2. The officer and his supervisor proceeded into the office where Shove was seated and advised Shove that his search condition was being invoked. *Id.* at 56:6–18. He observed that there was a cellphone on the chair next to Shove. *Id.* Shove told the officer that the backpack in the lobby belonged to him. *Id.* at

---

[5] Shove challenged the qualifications and techniques of the examiner. He also presented his own expert witness who testified during the evidentiary hearing that the polygraph questions were substandard making the results unreliable. ECF No. 59 at 158:13–159:2. He also criticized the scoring and decision system utilized by the polygrapher, testifying that the method does not have a sufficient empirical database on which it relies. *Id.* at 138:5–141:13.

[6] During the evidentiary hearing, Officer Stark testified to several issues he encountered during his supervision of Shove including: (1) Shove's purchase of sex toys in violation of the rules of his sex offender treatment in 2021; (2) his installation of an unauthorized web browser on his phone which allowed him to view websites with adult content in violation of his supervision conditions in 2022; (3) in 2022, the installation of an unauthorized anti-virus software program on his phone; (4) a notification from an authorized phone/computer-monitoring program that Shove's phone visited an adult pornography website but the program was unable to capture a picture of it due anti-virus software in 2020; (5) failure to install required phone/computer-monitoring software to his phone by a deadline of March 30, 2023; (6) discovering Shove improperly had deleted text messages from his phone in April of 2023; and (7) other instances where Shove took between two and five minutes to answer the door to his small apartment when Officer Stark would stop by for a visit. ECF No. 59 at 25:9–35:13; 38:21–39:5. As it relates to the deleted text messages, Officer Stark was unable to see the content of them (i.e. plain texts, images, photographs, etc.).

57:5–7. When asked if there was anything inside the backpack that would be concerning or a violation of his supervision, Shove stated that he had a cellphone in the backpack that was not known to probation. *Id.* at 57:5–12. When asked if there was anything on the phone that he would need to disclose to probation, Shove responded "You might as well take me to jail. There's child pornography on it." *Id.* at 57:17–23. Shove also admitted to having sexual contact with a minor. *Id.* at 59. Another officer retrieved a cellphone from Shove's backpack. *Id.* at 59:12–18. That officer told Stark that he believed there was potentially child pornography on the lockscreen of the cellphone. *Id.* at 62:20–22. Officer Stark reviewed the lockscreen photograph and testified it appeared to be a minor male who was completely naked with an erect penis. *Id.* at 64:9–10. Officer Stark also reviewed the background screen of the cellphone and observed a female who appeared to be between the ages twelve and fifteen years old, posed in a sexual manner. *Id.* at 63:25–64:3.

At some point, Shove and the officers relocated into an empty office as the officers decided what to do. *Id.* at 60:15–25. Ultimately, additional law enforcement was called. *Id.* at 61:3–4. Officer Stark also obtained a warrant for the device. *Id.* at 64:15–22. Later, Shove was transported to the Henderson Detention Center where he was booked on an emergency warrant. *Id.* at 65:24–66:1.

In June 2023, Shove was arrested pursuant to an arrest warrant issued based on new allegations that he violated the conditions of his supervised release. ECF Nos. 140 (petition for emergency warrant for offender supervision) and 149 (arrest warrant) in 2:05-cr-00416-JCM-BNW. The petition alleges that Shove possessed an unauthorized cellphone and that it contained child exploitation material and adult pornography. *Id.* ECF No. 140 at 3.[7] The petition also alleges that Shove admitted to meeting with a minor and engaging in sexual contact with him. *Id.*

---

[7] *See also* Hr'g. tr., ECF No. 59 at 11:15–12:2.

As a result of alleged exploitative material discovered on the phone by Shove's probation officer, Shove was indicted in this case on October 17, 2023. *See* Indictment, ECF No. 1. Shove is charged with two offenses: (1) Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), and (2) 18 U.S.C. §§ 2252A(a)(5)(B) and 2252(b)(2). *Id.* In May 2024, Shove filed a motion to suppress. Mot. to suppress, ECF No. 20. In his motion, Shove argued that the warrantless search of the cellphone found inside of his backpack was a violation of his Fourth Amendment rights. *Id.* at 3–5. He further argued that even if the search clause of his supervised release conditions permitted the warrantless search, the search was unreasonable, so suppression is warranted. *Id.* at 5–9. The government opposed the motion, arguing that it should be denied because Shove was subject to warrantless searches, the search was reasonable, and that this cause is distinguishable from *United States v. Lara*,[8] which Shove relied upon in arguing for suppression. *See generally* Opp'n, ECF No. 31. The government also argued that even if the court determines probation should not have invoked Shove's warrantless search provision, the search was conducted in good faith and any error was cured when the officers obtained a search warrant for the cellphone in question. *Id.* at 20–22. Shove filed a reply, reiterating that under the circumstances, probation was not permitted to invoke Shove's warrantless search condition, that the search was unreasonable, that the government's attempt to distinguish this case from *Lara* is misplaced, and that the subsequent warrant obtained by law enforcement to search the phone did not cure the Fourth Amendment violations. Reply, ECF No. 38.

After conducting an evidentiary hearing on the motion on September 26, 2024 (Mins., ECF Nos. 56 and 60), Judge Weksler issued her recommendation that I deny the motion to suppress. R&R, ECF No. 61. Therein, Judge Weksler found that, because of his status as a supervisee, Shove had a diminished privacy interest in his cellphone, that there was reasonable suspicion to invoke Shove's warrantless search clause, and that the search was reasonable. *See id.* Shove objects to the R&R, arguing Judge Weksler erroneously concluded that Shove had a

---

[8] 815 F.3d 605, 607 (9th Cir. 2016).

diminished privacy interest in his cellphone. Obj., ECF No. 66 at 8–10. He further argues that his search provision was ambiguous, and the R&R's finding otherwise was error. *Id.* at 10–13. Finally, Shove argues that the magistrate judge's determinations that the decision to search his phone was the result of reasonable suspicion, and that the search was ultimately reasonable, were erroneous. *Id.* at 13–16. The government filed a response to the objections, arguing that the R&R is not erroneous and therefore the objections should be overruled. Resp., ECF No. 67.

**III.   Discussion**

Individuals on supervised release, parole, or probation, "by virtue of their status alone . . . 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)). Sister courts have found that on the continuum of supervised individuals, the most severe are those on supervised release, followed in descending order by parolees and then probationers. *See United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016) (quoting *United States v. Lifshitz*, 369 F.3d 173, 181 n.4 (2d Cir. 2004)). I agree, thus supervised release offenders have a significantly diminished expectation of privacy. Further, "acceptance of a clear and unambiguous search condition 'significantly diminishe[s] [the defendant's] reasonable expectation of privacy." *Knights*, 534 U.S. at 120. With these principles in mind, Judge Weksler's determination that Shove had a diminished expectation of privacy in his cellphone was not erroneous.

Shove's contention that the R&R erred when it "fail[ed] to take a step further in its analysis that there is no real distinction between federal probation and supervised release for Fourth Amendment analysis" (ECF No. 66 at 9) does not demonstrate that the R&R is erroneous. As a threshold matter, there are differences between supervisees and probationers that cannot be summarily dismissed: for example, a defendant is subject to supervised release only after they have completed a term of incarceration and the term of supervised release is imposed at the time of sentencing, whereas a defendant on probation has received an alternative to imprisonment. *See* 18 U.S.C. § 3583(a). Further, the Supreme Court has long held that one's

supervision status informs an individual's expectation of privacy. *See Knights*, 534 U.S. at 118–19. Regardless, an individual on supervised release still would have a diminished expectation of privacy—like a parolee, *see Samson*, 547 U.S. at 852, or probationer, *see Knights*, 534 U.S. at 119–20, so there would be no reason for Judge Weksler to conduct further analysis beyond her determination that "Shove cannot establish that the search of his cell phone was unreasonable even if the Court treats him as a probationer." ECF No. 61 at 16.

Thus, the court turns and evaluates if the search of Shove's phone was reasonable. First, the court analyzes if Shove's search conditions prescribed warrantless searches and if he had knowledge of that, and then determines if there was reasonable suspicion to invoke any warrantless search provision.

### A. Shove's supervised release conditions authorized warrantless searches of his property and searches of computers.

Special condition #2 of Shove's supervised release conditions states:

> Search and Seizure – You shall submit to the search of your person, property, residence, or automobile under your control by the probation officer or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant to ensure compliance with all conditions of release.

*See* ECF No. 135 at 5 in 2:05-cr-00416-JCM-BNW. In both his suppression motion and his objection, Shove argues that because cellphones were not enumerated in his search provision, the search provision is unclear as to whether his cellphone was subject to search. *See* ECF No. 20 at 3–5; ECF No. 66 at 10–13. As a threshold matter, there is no requirement that every item that could possibly qualify as "property" be enumerated, and Shove cites no authority for such a requirement.[9] Rather, when a court imposes conditions of supervised release at sentencing, the

---

[9] Sister courts have addressed arguments regarding the need for exhaustive specificity and rejected those arguments. *See United States v. Hamilton*, 986 F.3d 413, 420 (4th Cir. 2021) ("We recognize the difficulty of writing restrictions that protect the public without turning the conditions sheet into a prolix code of Hammurabian proportions."); *United States v. Abbate*, 970 F.3d 601, 604 (5th Cir. 2020) ("[S]upervised release conditions 'do not have to be cast in letters six feet high, or . . . describe every possible permutation, or . . . spell out every last, self-evident detail.'" (quoting *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001))).

conditions should be clear enough to "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Shove's search and seizure condition plainly states the supervisee must submit their person, property, residence, or automobile under their control to warrantless searches. It sufficiently placed Shove[10] on notice of the scope of his search condition. Further, in 2020, years before the search that gives rise to his suppression motion, Shove signed the "computer monitoring agreement" acknowledging (1) he agrees to have his computer and mobile devices monitored, (2) that he will not possess any unauthorized[11] computers or mobile devices, and (3) that any information gathered by the monitoring software installed on his devices could be used against him. Govt. Ex. 3, ECF No. 31-3 at 2; *see also* ECF No. 59 at 30–33 (discussing the computer monitoring agreement and program).

Based on the plain language of Shove's search and seizure condition—"[y]ou shall submit to the search of . . . property . . . under your control by the probation officer . . . without a search warrant to ensure compliance with all conditions of release"—the cellphone was subject to a warrantless search. *See United States v. McReynolds*, 2022 U.S. App. LEXIS 34043, at *3 (9th Cir. Dec. 9, 2022) (finding that the defendant's supervised release conditions "clearly expressed the search condition," which required the defendant to "submit [his] . . . residence . . . to a search . . . based upon reasonable suspicion of contraband.") (citing *Knights*, 534 U.S. at 119)). Further, Shove admitted that the cellphone was inside of his backpack,[12] thus admitting, at a minimum,

---

[10] There was no evidence that Shove is not a person of ordinary intelligence. The record demonstrates that Shove knew what he was and was not allowed to have based on his statements to Officer Stark about how he should just go to jail because the phone contained child pornography.

[11] "Unauthorized" is defined as "any computer, internet capable or mobile device that is not actively monitored by the monitoring service without prior approval from the Court or supervising probation/parole officer." Govt. Ex. 3, ECF No. 31-3 at 2.

[12] The court also notes that the cellphone would have been inevitably discovered during a search of Shove's backpack which, by his own admission, was his property under his control. The inevitable discovery doctrine is an exception to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431 (1984). For the exception to apply, it must show by a preponderance of the evidence that the contraband or other material seized would have been discovered inevitably by lawful means. *Id.* Thus, assuming any Fourth Amendment violation had occurred (which the court does not find here), Shove's backpack was subject

that he had control over that property. The search condition makes it clear Shove knew the cellphone was property subject to warrantless search; the computer monitoring agreement further demonstrates that knowledge.

Even assuming arguendo that special condition #2 was unclear, the cellphone was still subject to search pursuant to special condition #6 of his supervised release. In relevant part, that condition[13] states:

> Computer Search – Monitoring Software – **To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct periodic, unannounced searches of any computers, (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring.** These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation.

*See* ECF No. 135 at 5 in 2:05-cr-00416-JCM-BNW (emphasis added). Title 18, United States Code, Section 1030(e)(1) defines "computers" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." Cellphones have long met this definition of a computer as they are electronic, magnetic, high speed data proceeding devices that have logical, arithmetic, or storage functions, as well as any

---

to search so the phone would have been discovered and searched, especially given apparent pornography on the lockscreen and Shove's admission that the phone contained pornography.

[13] The court recognizes that Shove's computer search condition does not specifically state what sort of data it will be monitoring. *Cf. United States v. Sales*, 476 F.3d 732, 737–38 (9th Cir. 2007) (holding that computer monitoring conditions are unconstitutionally vague when they provide no indication of what data is to be monitored). However here, unlike *Sales*, where the search and seizure provision extended to all computers, computer-related devices, and their peripheral equipment when Sales had no history of illegal conduct involving computers, Shove's computer search condition stated it was for the purpose of ensuring compliance with *all* conditions, and one condition was a pornography prohibition. Regardless, Shove's admission that the cellphone contained child pornography was an independent basis to obtain a search warrant for the device.

data storage facility or communications. Indeed, over a decade ago, and in one of the cases Shove relies on to support his objections, the U.S. Supreme Court determined that cellphones are like "minicomputers" with "immense storage capacity." *Riley v. California*, 573 U.S. 373, 393 (2014). Here, at a minimum, we know the cellphone at issue had a storage function because images were saved on it.

Further, the image on the lockscreen appeared to be a violation of special condition #3, which prohibits Shove from possessing pornography. *See* ECF No. 135 at 5 in 2:05-cr-00416-JCM-BNW. Shove admitted that the phone had child pornography on it. His admission, together with the lockscreen image, gave probation more than enough to invoke his warrantless search provisions.

In sum, I concur with Judge Weksler that "[w]hen read in conjunction with the search condition, Special Condition Nos. 1, 3, and (to a lesser extent) 6 make clear that Shove's cellphone is subject to a warrantless search." ECF No. 61 at 17. Further, the cases relied upon by Shove are inapplicable here. The *Riley* case involved defendants challenging warrantless searches of their cellphones that occurred after their arrest. 573 U.S. 373 (2014). *United States v. Lara* involved a warrantless *and suspicion-less* search of a probationer cellphone. In contrast, Shove, a person on federal supervised release, was: (1) aware his property was subject to warrantless searches, (2) aware he was not allowed to possess pornography, (3) aware his devices were subject to a search pursuant to the computer monitoring provision, and (4) searched after his supervising officer determined there was reasonable suspicion to invoke the search provision. Accordingly, Shove's objections that the R&R did not appropriately consider Shove's privacy interest, and that it misapplied *Riley* and *Lara*, are overruled.

### B. There was reasonable suspicion to invoke the warrantless search provision of Shove's supervision conditions.

The concept of reasonable suspicion, like probable cause, is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Rather, "it is a fluid

concept," *id.* at 235, and the Supreme Court has explained "the principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause," *Ornelas v. United States*, 517 U.S. 690, 696 (1996). *See also United States v. Sokolow*, 490 U.S. 1, 8 (1989) (reasonable suspicion depends on the "totality of the circumstances—the whole picture").

The reasonable suspicion standard was met, if not exceeded, here. Officer Stark testified to the occurrences that led up to his decision to invoke Shove's warrantless search provision.[14] Those occurrences included, but were not limited to: (1) Shove failing to attend a scheduled polygraph examination because he was ill, (2) Shove's admission that he lied about being too ill to attend that examination and that this suggested to him that Shove might be trying to hide something, (3) Shove's statement that he feared taking the polygraph test because of something the examiner previously said to him, and (4) after Shove completed the examination the day after he initially did not appear, the polygrapher[15] told Officer Stark that Shove had "a significant reaction to the question regarding using or possessing an electronic device that was not known to probation." *See generally* ECF No. 59 at 35–51. Officer Stark also explained his concern that Shove might be in violation of his supervision condition was colored by the fact that Shove had previously violated his conditions on numerous other occasions where he did not face any court action. *See, e.g., id.* at 18:15–19:15. This testimony, together with the fact that Shove has previously violated the conditions of his supervision, and Shove's prior convictions, are precisely the sort of

---

[14] Judge Weksler found Officer Stark's testimony about the need to search the phone to be credible. ECF No. 61 at 4, n.3. Shove does not challenge the officer's credibility.

[15] Shove objects to the R&R declining to consider the testimony of the polygraphers, arguing that this was error. ECF No. 66 at 15–16. I disagree. Officer Stark did not testify he found reasonable suspicion to search Shove's property based on the results of the polygraph alone. Rather he gave a litany of reasons he believed there was reasonable suspicion to invoke Shove's warrantless search provision. Thus, it was unnecessary to consider or weigh the competing polygraphers' testimonies and Judge Weksler's decision not to address it in the R&R was not erroneous.

events and historical facts that, given the totality of the circumstances, would lead an objectively reasonable law enforcement officer to develop reasonable suspicion. And reasonable suspicion existed *before* Shove admitted that he had an unauthorized cellphone with child pornography. Thus, there was reasonable suspicion to invoke the search provision of Shove's conditions, so the R&R appropriately determined that the search of Shove's phone was reasonable. Shove's arguments to the contrary are overruled.

IV.    Conclusion

IT IS HEREBY ORDERED the magistrate judge's report and recommendation **[ECF No. 61] is ADOPTED** in its entirety and Shove's objection **[ECF No. 66] is OVERRULED**. Accordingly, it is further ordered that Shove's motion to suppress is **[ECF No. 20] is DENIED**.

Dated: January 27, 2025

_____
Cristina D. Silva
United States District Judge